**Patrick N. HERRIGES and Charles R. Hall, Plaintiffs,**

v.

**UNITED STATES of America, the Department of Transportation, its Agents, the Federal Aviation Administration and E. G. Fairbank, Acting Chief, Great Falls Air Route Traffic Control Center, Defendants.**

**No. 2926.**

United States District Court, D. Montana, Great Falls Division.

July 2, 1970.

---

Dzivi, Conklin & Johnson, Great Falls, Mont., for plaintiffs.

Otis L. Packwood, U. S. Atty., D. Montana, Billings, Mont., William A. Brolin, Asst. U. S. Atty., Butte, Mont., for defendants.

## OPINION AND ORDER

RUSSELL E. SMITH, Chief Judge.

It is judicially noted that in late March and early April, 1970, the United States was injured because of a partial paralyzation of its air transportation system. The cause of the injury was the failure on the part of many air traffic controllers to report for duty. Petitioners, two of those controllers who failed to report for work, were discharged for, among other things, failing to report.[1] It is conceded that the applicable

---

1. There is an administrative appeal from the order of discharge, (5 C.F.R. § 752.-201 et seq.) and a judicial review of the final administrative action. (5 U.S.C.A. § 704). If it is ultimately determined that the agency action was erroneous, petitioners would be entitled to be restored to their positions and to back pay. (5 U.S.C.A. § 5595)

regulations of the Federal Aviation Administration were followed up to the point of discharge, but petitioners now claim that the regulations themselves deny due process, and seek by a preliminary injunction to preserve their status as employees pending a final review of the order discharging them.

The application for a preliminary injunction is denied and the order to show cause is discharged for these reasons:

The first object of the framers of the Constitution was to establish a system of government. The system established envisaged three great departments, legislative, executive and judicial,[2] with each department independently exercising its separate powers.[3] The business of controlling air traffic in the United States, under the rules established by the Congress, is the business of the executive. That business requires the management of personnel, and one of the aspects of personnel management is discipline. The regulations provide for a relatively prompt discipline. An employee may be fired after a thirty day notice of the charges and an opportunity to respond personally and in writing.[4] Probably the only effective discipline is prompt discipline—at least that is a tenable thesis. Does due process require in this case that the executive be denied the right to operate on that thesis?

I think not.

■ It has been the rule that courts do not have jurisdiction to interfere with the action of an administrative agency until the administrative remedies have been exhausted, at least where applicable rules have been followed.[5] That rule is not merely a convenient procedural device—it is a recognition of the fact that important business of one branch of the government cannot be successfully conducted if it is subjected to interruptions by another branch of the government which does not have the responsibility for the ultimate result. The rule continues and operates here unless the decision of the Supreme Court of the United States in Goldberg v. Kelly, *supra*, compels a contrary result. It does not.

That case held that a Public Welfare recipient had a certain "entitlement" to welfare which could not be cut off in the absence of a pre-termination evidentiary hearing.[6] The due process requirement which was applied in Goldberg was found after a balancing of the "precise nature of the government function involved as well as of the private interest that has been affected by governmental action."[7] In *Goldberg* the only governmental interest involved was money. In this case the governmental interest is in the assured continuation of governmental functions—an assurance possible only if there is in turn an assurance that at any given time sufficient governmental employees will be on hand to do whatever job needs to be done. In terms of the purpose of government nothing turns on John Kelly and his fellow welfare recipients, but on governmental employees turns the whole business of government. So, if in the

2. Martin v. Hunters Lessee, 1 Wheat. 304, 4 L.Ed. 97 (1816).

3. O'Donoghue v. United States, 289 U.S. 516, 53 S.Ct. 740, 77 L.Ed. 1356 (1933).

4. See 5 C.F.R. §§ 752–201 et seq.

5. See footnote 10 in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

6. There is some difference between the hearing provided for by the regulations here and the hearing provided for in Goldberg. For reasons hereafter made apparent I do not distinguish Goldberg on that ground.

7. The opinion in Goldberg suggests that a government employee whose pay is cut off is in a different category that a welfare recipient whose welfare is terminated. The evidence here does indicate that petitioners will suffer from the action taken even if they are ultimately vindicated, but immediately at least not in the degree that a welfare recipient might suffer. Because I deem the independence of the executive so important in this case I have placed the public interest in one balance and the most desperate personal need in the other in reaching my conclusion.

words of *Goldberg,* we look at the "government function involved" we find the difference between this case and *Goldberg.*

The concurring opinion in Ricucci v. United States, Ct.Cl.1970, 425 F.2d 1252, is urged as authority for the petitioners' position. I consider what is said in the concurring opinion relative to the lack of due process in the existing legislative regulations relative to the discharge of government employees only for the purpose of rejecting it.

 I think that the United States, in its sovereign capacity, has a right in the hiring of employees, to fix the conditions of the hiring, in terms of the salary to be paid, the hours to be worked, the rules to be obeyed and the tenure to be enjoyed. I do not believe that due process enters into the contract between the United States and its employees. Once the contract of employment is made, the rules and regulations may become a part of that contract and then the employee does have contractual rights which must be respected. There is no conflict between what is here said and Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967) and Meehan v. Macy, 129 U.S.App.D.C. 217, 392 F.2d 822 (1968). In the former a policeman was said not to be required to give up his rights not to incriminate himself as a condition of his employment, while in the latter case it was said that a federal employee does not forfeit all First Amendment rights upon being employed. The point is, however, that in the cited cases the individuals involved had rights which originated not in their employment but in the Constitution itself. There is a difference between a man who is denied public employment because he is black or who is fired because he had voiced an opinion on a matter of public concern,[8] and one who is discharged because the terms of his employment permit the discharge. There is no constitutional right to particular terms in a contract of employment and if, as here, the conditions of the employment provide for a prompt discharge on the basis of disclosed facts with post-discharge rights to a full exploration of those facts I think that due process is satisfied. Procedures presently provided are sufficient, ultimately to disclose, (to the extent that the ascertainment of truth is ever possible) whether a discharge is the result of an arbitrary or discriminatory act—whether there has been a breach of the contract of employment or of a constitutional right. More is not required.

 I am not tempted, using the decision in *Goldberg* as a springboard, to discover new due process rights which would undercut long established administrative procedures. The recent discovery by public employees of all levels of government that under our general system of due process, laws cannot be enforced against mass violators of law and that the no strike law[9] applicable to government employees and injunctions issued under them can be violated almost with impunity has immeasurably increased the burdens of the executive department. It ill behooves the judiciary at this time in our history to add to those burdens by the enlargement of due process concepts.[10]

---

8. Cf. Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

9. 5 U.S.C.A. 7311.

10. The merits of the dispute between the government and the petitioners is not in issue and nothing said is intended to express an opinion as to the actions of the petitioners on the one hand and the relators on the other.